

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Clint Barham
County Attorney
Erath County
Stephenville, Texas

Dear Sir:

> This Opinion
> Overrules Opinion
> #O-456  6-75O
> and 357

Opinion No. O-4446
Re: Canvassing of election returns
of trustee elections in common
and independent school districts

Your request for opinion has been received and
carefully considered by this department. We quote from your
request as follows:

"Prior to 1941 article 2746a was the controlling
statute on school trustee elections. It provides that
the election shall be returned to and canvassed by the
commissioners court. In 1941 the Legislature enacted
article 2746 providing that returns of elections for
school trustees shall be made to the local board of
trustees, canvassed by them, and reported to the County
Superintendent.

"It is my opinion that the 1941 statute repeals
the former statute in so far as it conflicts with it.
However it is now claimed that article 2746 of 1941
applies only to common school districts and to indepen-
dent districts only when there are more than 500 scholas-
tics enrolled in the district; that in an independent
school district with less than 500 scholastics the returns
must be canvassed and results declared by the commissioners
court.

"From a reading of these provisions I see no basis
for such distinctions but inasmuch as the question is made
and it will soon be time for trustee elections I ask that
you give me your opinion on these questions:

Hon. Clint Barham, page 2

.."(1) Which body should canvass the returns of trustee elections of common school districts?

"(2) Which body should canvass the returns of independent school districts wherein the scholastics are less than 500?

"(3) Which body should canvass the returns of independent school districts having scholastics of more than 500?"

Articles 2746 and 2746a, Vernon's Annotated Texas Civil Statutes, read as follows:

"Art. 2746.
"Said trustees shall appoint three (3) persons, qualified voters of the district, who shall hold such election and make returns thereof to said trustees within five (5) days after such election, and said persons shall receive as compensation for their services the sum of One Dollar ($1) each, to be paid out of the local funds of the school district where the election was held. The Board of Trustees, when ordering such election and appointing persons to hold election, shall give notice of the time and place where such election will be held, which notice shall be posted at three (3) public places within the district at least twenty (20) days prior to the date of holding said election. If, at the time and place for holding such election, any or all of the persons so appointed to hold such election are absent or refuse to act, then the electors present may select of their number a person or persons to act in the place of those absent or refusing to act. Said Board of Trustees shall meet and canvass the returns of said election within five (5) days after returns have been made and declare the result of said election and issue to the persons so elected their commissions as such trustees, and shall notify the County Judge or the County Superintendent if the county has a Superintendent. As amended, Acts 1941, 47th Leg., p. 1373, ch. 623, §1."

Hon. Clint Barham, page 3

"Art. 2746a.

"All of the ballots for the election of a school trustee in common school districts and in independent school districts having fewer than five hundred (500) scholastics as shown by the last preceding scholastic census roll approved by the State Department of Education and exclusive of transfers shall be printed with black ink on clear white paper, of sufficient thickness to prevent the marks thereon being seen through the paper, and be of uniform style and dimension; at the top of the ballot there shall be printed 'Official Ballot, _____ Independent School District', the number or name of the school district in which the election is to be held to be filled in by the judge of the county when he orders the ballots printed. Any person desiring to have his name placed on said official ballot, as a candidate for the office of trustee of a common school district or of an independent school district as herein provided shall, at least ten days before said election, file a written request with the county judge of the county in which said district is located, requesting that his name be placed on the official ballot, and no candidate shall have his name printed on said ballot unless he has complied with the provisions of this Act; provided that five or more resident qualified voters in the district may request that certain names be printed. The county judge, upon receipt of such written request, and at least five days before the election, shall have the ballots printed as provided in this Act, placing on the ballot the name of each candidate who has complied with the terms of this Act, and deliver a sufficient number of printed ballots and amount of supplies necessary for such election to the presiding officer of the election at least one day before said election is to be held, said election supplies, ballots, boxes, and tally sheets to be delivered by the county judge by mail or in any other manner by him deemed best, to the presiding officer of said election in sealed envelopes which shall not be opened by the election officer until the day of the election. The expenses of printing the ballots and delivering same to the presiding officer, together with the other expenses incidental to said election shall be paid out of the available maintenance funds belonging to the school district in which said election is held, or to be held. The officers of said election

Hon. Clint Barham, page 4

shall be required to use the ballots so furnished by the county judge as provided herein. The election officers shall make returns of said election to the county judge and certify the result in the same manner as is now required by law, and said ballot boxes which shall have been furnished by local school officials shall be sent to the county judge and said election returns shall be canvassed by the Commissioners' Court and together with ballot boxes shall be safely preserved for a period of three months next after the date of the election. (As amended Acts 1935, 44th Leg., p. 135, ch. 55, 0 2.)"

Your first question requires the construction of Articles 2746 and 2746a, Vernon's Annotated Texas Civil Statutes. The legislative history of these statutes is therefore highly pertinent. Article 2746 was enacted in 1915 and among other things provided that the board of trustees of common school districts should canvass the returns of trustee elections of such districts. Article 2746a was enacted in 1925 by Senate Bill 262 of the 39th Legislature, and among other things provided that the commissioners' court should canvass the returns of trustee elections of common school districts and of independent school districts having less than 500 scholastics. Section 2 of Senate Bill 262 above referred to provided for the repeal of all laws in conflict. It is our opinion that Senate Bill 262 repealed and superseded the provision in Article 2746 providing for the canvassing of trustee election returns of common school districts by the board of trustees, and that upon the passage of Article 2746a in 1925 the commissioners' court and not the board of trustees was the proper body to canvass trustee election returns of common school districts. In 1935 Article 2746a was amended by the 44th Legislature in only one respect, towit: the payment of election expenses out of school funds of the district instead of out of the general fund of the county. In 1937 Article 2746 was re-enacted by the 45th Legislature; it was amended only to provide that the trustees should appoint three qualified persons for each voting box of the district instead of merely three qualified voters of the district to hold the trustee elections. Section 2 of the act, H. B. 782, provided as follows:

"Because of the fact that in some school districts in Texas there is more than one voting box, and whereas under the old Statutes great inconvenience was caused to the residents of such districts because of the great distance which must necessarily be traveled and whereas much saving of time and expense can be obtained by allowing the holding of elections more convenient to the voters create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force on and after its passage, and it is so enacted."

The act did not contain a repealing clause. Article 2746 was again re-enacted and amended in 1941 by H. B. 11 of the 47th Legislature. The article was amended only with respect to the payment of election expenses, providing for the payment of such expenses by the board of trustees instead of the county. The act did not contain a repealing clause.

We think the following rules of statutory construction are pertinent and applicable to your first question. We quote from Lewis' Sutherland Statutory Construction, pages 441-2-3-4, 524-5-6, as follows:

"The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of such amendments. So far as the section is changed it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the mere nominal re-enactment should have the effect of disturbing the whole body of statutes in pari materia which had been passed since the first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before an implied repeal can be recognized. 'By observing the constitutional form of amending a section of a statute,' says the court in one case, 'the legislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is indicated. Any other rule of construction would surely introduce unexpected results and work great inconvenience.'

Hon. Clint Barham, page 6

"The amendment operates to repeal all+bu the sec-
tion amended not embraced in the amended form. The por-
tions of the amended sections which are merely copied
without change are not to be considered as repealed and
again enacted, but to have been the law all along; and
the new parts or the changed portions are not to be taken
to have been the law at any time prior to the passage of
the amended act. The change takes effect prospectively
according to the general rule. . . . A repeal of that
act would not revive the provisions as originally enacted.
On the contrary, a repeal of the amendatory act would be
a repeal of the previsions therein continued in force from
the original act.

". . . Where a proviso is added to a section by
amendment it will be strictly construed and will be applied
only to that section, unless a contrary intent is clear."
(Emphasis added)

"Repeal and re-enactment — Effect of re-enactment
on intermediate acts.— This subject has already been con-
sidered to some extent in a former chapter. Where an act
is amended or revised, and the former act expressly or by
implication repealed, such provisions of the old law as are
substantially re-enacted are deemed to be continuous. 'A
later law which is merely a re-enactment of a former does
not repeal an intermediate act which has qualified or limited
the first one, but such intermediate act will be deemed to
remain in force, and to qualify or modify the new act in the
same manner as it did the first.' This is especially true
if the intermediate law is special or particular and the
re-enacted law is a general law on the same subject. Where
a law is amended and re-enacted as amended, any intermediate
law inconsistent with the new matter introduced, or change
made by the amendment, will be repealed. Where a law is
substantially re-enacted it is said to show that the legis-
lature did not regard it as repugnant to an intermediate
act to some extent covering the same subject. A town charter
granted in 1857 forbade the sale of liquor. An amendment
made in 1859 gave power to license its sale. In 1870 the
charter of 1857 was re-enacted and the limits of the town
extended. This was held not to repeal the act of 1859,
but to be a mere declaration that the act of 1857 was

still in force, and related back to the time of its
original passage. Section 5 of an act of Nevada of
1885 in regard to the compensation of county officers
fixed the compensation of the county officers of Elk
county, giving the sheriff certain fees, the district
attorney a salary of $2,000 and the superintendent of
schools a salary of $600. February 23, 1887, an act
was passed to consolidate certain county offices,
which provided that district attorneys should be ex
officio superintendents of schools without additional
compensation. On March 5, 1887, section 5 of the act
of 1885 was amended so as to give the sheriff of Elk
county a salary of $4,000, in lieu of fees, and the
section re-enacted including the salary of $600 for
the superintendent of schools. It was held that the
only object of the act of 1887 was to change the com-
pensation of the sheriff to a salary, that it did not
repeal or affect the act of February, 1887, and that
the district attorney was not entitled to the salary
of $600 as ex officio superintendent of schools."

It is our opinion that Senate Bill 262 of the
39th Legislature repealed and superseded the provision of
Article 2746 (passed in 1915) providing for the canvassing
of trustee elections of common school districts by the board
of trustees. It is our further opinion that it was not the
intention of the 45th Legislature in 1937 to repeal the pro-
vision of Article 2746a providing for the canvassing of
trustee elections of common school districts by the commis-
sioners' court in their re-enactment and amendment of Article
2746. It is our further opinion that it was not the intention
of the 47th Legislature in 1941 to repeal such provisions of
Article 2746a in the re-enactment and amendment of Article 2746.

The case of Shaw v. Taylor, 146 S.W. (2d) 452,
rendered Dec. 19, 1940, involved the contest of a common school
district trustee election. The trial court's findings of fact
show that the election returns were canvassed by the commis-
sioners' court. Neither party questioned this proposition
although other matters were strongly contested. The court
with full knowledge of such facts rendered judgment. Of course
this case is not decisive of your first question as the matter
was not directly before the court, but it is at least to some
extent persuasive upon the question.

Hon. Clint Barham, page 8

In answer to your first question you are respectfully advised that it is the opinion of this department that the commissioners' court should canvass the returns of trustee elections of common school districts. Opinions Numbers O-655, O-750 and O-1357 of this department are hereby overruled insofar as they conflict with this holding.

The case of Thomas v. McGown, 94 S.W. (2d) 839, holds that an election in an independent school district having less than 500 scholastics was not completed until the returns had been canvassed by the commissioners' court as provided by Article 2746a, V.A.C.S.

In answer to your second question you are respectfully advised that it is the opinion of this department that the commissioners' court should canvass the returns of trustee elections of independent school districts wherein the scholastics are less than 500.

Article 2776, Vernon's Annotated Texas Civil Statutes, reads as follows:

"All elections shall be ordered by the board of trustees of each independent school district; and such order shall be made at least ten days before the date of election; and a notice of the order shall be posted at three different places in the district. The board of school trustees, at the time of ordering such election, shall appoint three persons to hold the election, and shall designate the places where the polls shall be open. Each person appointed to hold such election shall receive one dollar therefor, to be paid out of the general fund of the county as other claims are paid. All such elections shall be held, and returns thereof made to the board of school trustees, in accordance with the general election laws. The board of school trustees shall canvass such returns, declare the result of such election, and issue certificates of election to the persons shown by such returns to be elected."

The case of Miller v. Coffee, 118 T. 381, 15 S.W.(2d) 1036, answers to certified questions conformed to (Civ. App.) 17 S.W. (2d) 1100, holds that Article 2776,V.A.C.S., applies to school districts organized under general independent school district laws.

Hon. Clint Barham, page 9

        "In answer to your third question you are respect-
fully advised that it is the opinion of this department that
the board of trustees should canvass the returns of trustee
elections of independent school districts having scholastics
of 500 or more.

                                    Very truly yours

                                    ATTORNEY GENERAL OF TEXAS

APPROVED MAY 1, 1942

                              By

FIRST ASSISTANT
ATTORNEY GENERAL                    Wm. J. Fanning
                                        Assistant

WJF:AMM

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN